UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK



UNITED STATES DISTRICT COURT
FILED
JAN 2 5 2019
MARY C. LOEWENGUTH, CLERK
WESTERN DISTRICT OF NY

UNITED STATES OF AMERICA,

v.

DONALD BRENNAN,

Defendant.

**DECISION AND ORDER**

1:19-MR-00002 EAW

## INTRODUCTION

On June 4, 2018, a criminal complaint was filed alleging that defendant Donald Brennan ("Defendant") violated 18 U.S.C. § 2250(a) by knowingly failing to register or update a registration as required by the Sex Offender Registration and Notification Act. *United States v. Brennan*, No. 18-mj-5083, Dkt. 1 (W.D.N.Y. June 4, 2018). The magistrate judge handling the case found Defendant incompetent to stand trial on December 3, 2018. *Id.*, Dkt. 13. On that same date, Defendant moved to dismiss the criminal complaint and sought his immediate release from custody. *Id.*, Dkt. 12. The magistrate judge orally denied Defendant's motion at a hearing on December 21, 2018, and found that Defendant must be committed to the custody of the Attorney General pursuant to 18 U.S.C. § 4241(d). *Id.*, Dkt. 17, Dkt. 18. Defendant appealed the magistrate judge's decision on January 3, 2019 (Dkt. 1), and the appeal was assigned to the undersigned. For the reasons discussed below, Defendant's appeal is denied, the magistrate judge's decision

- 1 -

is affirmed, and Defendant shall be committed to the custody of the Attorney General to be hospitalized for a reasonable period, not to exceed four months, to attempt to restore him to competency.

## **BACKGROUND**

The criminal complaint against Defendant was filed on June 4, 2018. *Brennan*, No. 18-mj-5083, Dkt. 1. The case was assigned to United States Magistrate Judge Michael J. Roemer, and an initial appearance was held on June 5, 2018, at which time the Government moved for detention. *Id.*, Dkt. 2.[1] A detention hearing was scheduled for June 8, 2018. *Id.* Defense counsel requested a preliminary local mental health evaluation, and the Government did not object. The time between June 5, 2018, and June 8, 2018, was excluded under the Speedy Trial Act of 1974, 18 U.S.C. § 3161 *et seq.* (the "STA") pursuant to §§ 3161(h)(1)(A) (delay resulting from proceedings to determine the mental competency of a defendant), (h)(1)(D) (delay resulting from any pretrial motion—in this case, the Government's motion for detention), and (h)(7)(A) (delay resulting from a continuance where the judge finds that ends of justice served by the continuance outweigh the best interest of the public and the defendant in a speedy trial). Defendant was remanded to the custody of the United States Marshals Service. *Brennan*, No. 18-mj-5083, Dkt. 2.

---

[1] Written transcripts of the appearance before Judge Roemer have not been prepared. Instead, the Court has listened to the relevant audio transcripts to inform itself as to the proceedings before Judge Roemer.

Judge Roemer entered an order granting the request for a preliminary local mental health evaluation on June 6, 2018. *Id.*, Dkt. 4.

An appearance was held before Judge Roemer on June 8, 2018; however, no detention hearing occurred because Defendant had not yet undergone the mental health examination. *Id.*, Dkt. 5. The detention hearing was rescheduled for June 12, 2018, and a status conference was set for September 10, 2018. *Id.* On motion of the Government and without objection by Defendant, Judge Roemer found on the record that time was excluded under the STA through September 10, 2018, pursuant to §§ 3161(h)(7)(A) and (h)(7)(B)(iv).

The parties appeared before Judge Roemer on June 12, 2018. *Brennan*, No. 18-mj-5083, Dkt. 6. Again, the detention hearing did not occur because Defendant had not yet undergone a mental health evaluation. *Id.* The detention hearing was rescheduled for July 27, 2018. *Id.*

On July 2, 2018, the Court forwarded to the parties a copy of a mental health evaluation performed at the Little Valley Jail. (Dkt. 6 at 6; Dkt. 8 at 2-4). On July 27, 2018, Defendant filed a motion for a competency hearing, as well as notices under Federal Rule of Criminal Procedure 12.2(a) and (b) of his intent to assert an insanity defense at trial and to introduce expert evidence on that issue. *Brennan*, No. 18-mj-5083, Dkt. 7. That same day, a status conference was held and Judge Roemer granted the defense request (joined by the Government) and directed both a competency evaluation and a criminal

responsibility evaluation. *Id.*, Dkt. 8, Dkt. 9. Judge Roemer scheduled another status conference for September 27, 2018. *Id.*, Dkt. 9. Judge Roemer confirmed on the record that the time was excluded under the STA pursuant to § 3161(h)(1)(A), and he also granted an exclusion in the interests of justice pursuant to §§ 3161(h)(7)(A) and (h)(7)(B)(iv).[2]

Defendant was thereafter transported to the Metropolitan Correctional Center, New York ("MCC Manhattan") for the competency and criminal responsibility evaluations. Defendant was first taken to the Metropolitan Detention Center, Brooklyn ("MDC Brooklyn"), where he arrived at the latest on August 9, 2018. (Dkt. 8 at 14). Defendant arrived at MCC Manhattan on August 20, 2018, and underwent evaluations on September 19, 20, 24, and 26, 2018; October 11, 17, and 25, 2018; and November 8, 2018. (*Id.* at 8, 15).

On September 27, 2018, Judge Roemer held another status conference. *Brennan*, No. 18-mj-5083, Dkt. 11. Defense counsel informed Judge Roemer that Defendant's competency and criminal responsibility examinations were ongoing, and Judge Roemer scheduled an additional status conference for December 3, 2018. *Id.* At that appearance

---

[2]    Pursuant to the audio transcript of the appearance before Judge Roemer on July 27, 2018, the Government indicated its position that the time was excluded under § 3161(h)(1)(A) and also requested that the time *through the completion of the reports* concerning the competency and criminal responsibility evaluations be excluded in the interests of justice. In response to the Government's statements in that regard, defense counsel responded that he had no objection. However, Judge Roemer imposed a limit on the interests-of-justice exclusion by setting a status conference for September 27, 2018, and only granting the STA exclusion under § 3161(h)(7) through that status conference date.

on September 27, 2018, discussion was had about the continued automatic exclusion of time from the speedy trial clock pursuant to § 3161(h)(1)(A), but Judge Roemer also granted an interests-of-justice exclusion through December 3, 2018, pursuant to §§ 3161(h)(7).[3]

The written competency and criminal responsibility evaluations were completed on November 13, 2018. (Dkt. 8 at 8, 26). The Court received copies on November 26, 2018, and provided copies to the parties on November 28, 2018. (Dkt. 6 at 8-9).

Counsel appeared before Judge Roemer on December 3, 2018; Defendant was not present. *Brennan*, No. 18-mj-5083, Dkt. 13. In response to Defendant's motion, and upon the stipulation of the Government, Judge Roemer found by a preponderance of the evidence that Defendant is presently suffering from a mental defect rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him and unable to assist in his own defense. *Id.* Defense counsel

---

[3] According to the audio transcript of the appearance on September 27, 2018, Government counsel asked that the time be excluded through the next scheduled appearance on December 3, 2018, referencing §§ 3161(h)(1)(A) and (h)(4). In response, defense counsel indicated that he agreed with counsel for the Government but wanted to reserve his client's rights under § 3161(h)(1)(F) and not waive any time for transportation in excess of 10 days. Judge Roemer then made a finding on the record that "the ends of justice served by the requested continuance outweigh the best interests of the public and the defendant in a speedy trial, and the time between now and December 3, 2018, shall be excluded from the speedy trial clock." Thus, regardless of any automatic exclusions from the speedy trial clock as discussed by counsel, Judge Roemer granted an interests-of-justice exclusion through December 3, 2018, at the appearance on September 27, 2018.

indicated that he intended to file a motion to dismiss the criminal complaint and for Defendant's release from custody; Judge Roemer ordered that the Government file a response by no later than December 7, 2018, and scheduled oral argument for December 11, 2018. *Id.* Defense counsel filed the motion later that day. *Id.*, Dkt. 12. The Government filed a response on December 7, 2018. *Id.*, Dkt. 14.

Due to transportation delays, the oral argument on Defendant's motion to dismiss was rescheduled to December 19, 2018. However, oral argument was not held that day because Defendant was not present, again because of transportation issues. *Id.*, Dkt. 16. Oral argument was ultimately held on December 21, 2018, with Defendant present. *Id.*, Dkt. 17. Judge Roemer denied Defendant's motion to dismiss and, pursuant to 18 U.S.C. § 4241(d), found that Defendant must be committed to the custody of the Attorney General to be hospitalized for treatment for a reasonable period, not to exceed four months, to attempt to restore him to competency. Judge Roemer instructed the Government to submit a proposed order committing Defendant to the Attorney General's custody. *Id.*

On January 3, 2019, Defendant filed an appeal of Judge Roemer's decision, which was assigned to the undersigned. (Dkt. 1). On January 4, 2019, Judge Roemer issued a written decision memorializing his oral ruling on Defendant's motion and staying Defendant's commitment to the Attorney General pending the resolution of the instant appeal. *Brennan*, No. 18-mj-5083, Dkt. 18.

Defendant filed additional briefing regarding his appeal on January 10, 2019 (Dkt. 6), and the Government filed a response on January 14, 2019 (Dkt. 9). Oral argument was held before the undersigned on January 15, 2019, and the Court reserved decision. (Dkt. 10).

## DISCUSSION

I. **Standard of Review**

Defendant has asked this Court to review Judge Roemer's denial of his motion to dismiss and finding that he must be committed to the custody of the Attorney General for hospitalization to attempt to restore his competency. Although neither party has briefed the issue, the Court must determine as an initial matter the appropriate standard of review.

Under Federal Rule of Criminal Procedure 59, a magistrate judge may determine "any matter that does not dispose of a charge or defense." Fed. R. Crim. P. 59(a). A party may file objections to a non-dispositive ruling by a magistrate judge, and the district judge will review the order and set aside or modify any part of it that is "contrary to law or clearly erroneous." *Id.* With respect to dispositive matters, a magistrate judge may conduct proceedings and issue a recommendation to the district judge. Fed. R. Crim. P. 59(b)(1). Objections to a magistrate judge's recommendation on a dispositive matter are reviewed *de novo*. Fed. R. Crim. P. 59(b)(3); *see also* 28 U.S.C. § 636(b)(1).

Here, Defendant's motion to dismiss dealt with a dispositive matter and therefore the Court reviews Judge Roemer's denial of that request *de novo*. With respect to Judge Roemer's order finding Defendant incompetent and committing Defendant to the custody of the Attorney General under § 4241(d), "the authority of a magistrate judge to issue competency decisions with or without a referral order has not been addressed by the Second Circuit." *United States v. Foltz*, No. 16-MJ-511, 2018 WL 2175554, at *3 n.1 (W.D.N.Y. May 9, 2018) (noting conflicting authority), *report and recommendation adopted*, 2018 WL 2192198 (W.D.N.Y. May 11, 2018). "In light of the lack of guidance from the Second Circuit and in an abundance of caution," *id.*, the Court will also review Judge Roemer's determination that Defendant must be committed to the custody of the Attorney General *de novo*.

## II.    Commitment to the Attorney General for an Attempt at Restoration

Defendant does not challenge Judge Roemer's determination that he is not currently competent to stand trial; to the contrary, defense counsel affirmatively sought this relief and confirmed on the record at oral argument before the undersigned that Defendant agrees with that determination.[4]  Instead, Defendant argues that Judge Roemer erred in finding

---

[4]    Defense counsel notes in his memorandum of law that Defendant was not present at the hearing on December 3, 2018, wherein Judge Roemer found that Defendant was incompetent. (Dkt. 6 at 9). A criminal defendant has a constitutional right to be present "at all stages of the proceedings where fundamental fairness might be thwarted by [his] absence." *Grayton v. Ercole*, 691 F.3d 165, 170 (2d Cir. 2012) (quoting *Faretta v. California*, 422 U.S. 806, 816 (1975)). Although Federal Rule of Criminal Procedure 43 does not expressly identify a defendant's presence as required at competency proceedings,

that he must be committed to the custody of the Attorney General pursuant to § 4241(d), because his continued commitment violates his due process and equal protection rights in light of the fact that there is no reasonable possibility he can be restored to competency. (Dkt. 6 at 10-16). The Court has reviewed the record *de novo* and finds this argument without merit.

Under § 4241(d), if the Court finds by a preponderance of the evidence that a "defendant is presently suffering from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense," then "the court **shall** commit the defendant to the custody of the Attorney General." 18 U.S.C. § 4241(d) (emphasis added). The Attorney General thereafter must "hospitalize the defendant for treatment in a suitable facility" for (1) "such a reasonable period of time, not to exceed four months, as is necessary to determine whether there is a substantial probability that in the

---

this Court agrees with those courts that have found that "a defendant has a constitutional right to be present at a competency hearing[.]" *United States v. Gillenwater*, 717 F.3d 1070, 1077 (9th Cir. 2013); *see also United States v. Barfield*, 969 F.2d 1554, 1556 (4th Cir. 1992) (finding that "a competency hearing is a critical stage of a defendant's trial" at which he has the right to be present); 18 U.S.C. § 4247(d) (setting forth rights of defendant at a hearing to determine mental competency, including the right to testify). However, those courts have also found that "the doctrine of harmless error would preclude reversal if the defendant's absence from the competency hearing was not prejudicial." *Barfield*, 969 F.2d at 1556. Here, the parties were in agreement that Defendant was incompetent, the Government stipulated to Defendant's contentions in that regard, and defense counsel made no objection on the record to his client's absence on December 3, 2018. Under these circumstances, to the extent that Defendant is arguing his rights were violated by his absence from the hearing on December 3, 2018, the Court finds that any error was harmless.

foreseeable future he will attain the capacity to permit the proceedings to go forward," and (2) "for an additional reasonable period of time until" either "his mental condition is so improved that trial may proceed, if the court finds that there is a substantial probability that within such additional period of time he will attain the capacity to permit the proceedings to go forward," or "the pending charges against him are disposed of according to law," "whichever is earlier." *Id.* The Second Circuit has held that upon a finding of incompetency under § 4241(d), commitment to the custody of the Attorney General is mandatory. *See United States v. Magassouba*, 544 F.3d 387, 404 (2d Cir. 2008) ("In short, in contrast to the discretion afforded district courts in deciding whether to commit a defendant for a preliminary competency examination, once a defendant is found incompetent, commitment pursuant to § 4241(d) is mandatory.").

Here, Judge Roemer found by a preponderance of the evidence that Defendant was incompetent, and no challenge to that finding has been made. Rather, both parties agreed with that determination and had advocated that Judge Roemer make that determination. The Court therefore adopts Judge Roemer's finding that Defendant is currently incompetent. Accordingly, under the plain language of § 4241(d), and as confirmed by the Second Circuit in *Magassouba*, the Court is without discretion to do anything other than commit Defendant to the custody of the Attorney General for an attempt at restoration.

Defendant argues, relying on *Jackson v. Indiana*, 406 U.S. 715 (1972), that commitment under § 4241(d) is unconstitutional where there is no reasonable likelihood

- 10 -

that a defendant can be restored to competency. (Dkt. 6 at 11-12). This argument is unavailing, for several reasons. First, *Jackson* dealt with indefinite detention, 406 U.S. at 731, while the detention at issue here is not indefinite. In *Magassouba*, the Second Circuit noted that § 4241(d) was adopted precisely to respond to the "due process concerns identified in *Jackson v. Indiana*," and that its limitation of the commitment to a reasonable time echoes the Supreme Court's holding therein. 544 F.3d at 403; *see also United States v. Smith*, 764 F. Supp. 2d 541, 544 (W.D.N.Y. 2011) ("Section 4241(d) was enacted in order to address the due process concerns posed by indefinite commitment, as identified in *Jackson*. . . . [C]ommitment under section 4241 may only be for a reasonable period of time necessary to determine if there exists a substantial probability that the person will attain the capacity to permit the trial to go forward in the foreseeable future." (quotation omitted)). Defendant has not provided any authority for the proposition that commitment under § 4241(d) violates the due process principles articulated in *Jackson*.

Moreover, although the Second Circuit has not expressly ruled on the issue, multiple federal Courts of Appeals have rejected the argument made by Defendant here. *See, e.g.*, *United States v. Dalasta*, 856 F.3d 549, 553 (8th Cir. 2017) ("[Section] 4241(d) imposes a mandatory duty to commit a defendant who is found incompetent to the custody of the Attorney General, <u>even if there is undisputed medical evidence that the defendant cannot be restored to competency</u>." (emphasis added)); *United States v. Strong*, 489 F.3d 1055, 1062 (9th Cir. 2007) (rejecting argument that commitment under § 4241(d) violates due

process and noting that the defendant's argument to the contrary "presumes an answer to the precise question to be determined through § 4241(d) commitment—namely, the question of whether a defendant is, in fact, restorable to mental competency"); *United States v. Filippi*, 211 F.3d 649, 651-2 (1st Cir. 2000) (finding commitment under § 4241(d) constitutional even where the defendant's condition was irreversible, explaining that "Congress could reasonably think that, in almost all cases, temporary incarceration would permit a more careful and accurate diagnosis before the court is faced with the serious decision whether to defer trial indefinitely and (quite often) to release the defendant back into society"); *United States v. Donofrio*, 896 F.2d 1301, 1302-03 (11th Cir. 1990) ("[The defendant] argues that since the evidence at his competency hearing shows that his condition is permanent, it is a violation of *Jackson* to hold him. . . . The permanency of [the defendant]'s condition was not an issue before the district court at that time, however. Once the court found by a preponderance of the evidence that the defendant is presently suffering from a mental disease or defect rendering him mentally incompetent to stand trial, then it was required to commit the defendant to the custody of the Attorney General. The permanency of the condition would then be determined for later consideration by the court." (quotation omitted)).   The Court is persuaded by the reasoning in these decisions. While the evidence in this case does suggest a relatively low probability that Defendant can be restored to competency, the commitment required by § 4241(d) is meant to provide a definitive answer to that question.  As the Eighth Circuit has noted:

[T]he miracles of science suggest that few conditions are truly without the possibility of improvement. Therefore, even where the medical reports presented to the district court showed by a preponderance of the evidence that the condition was permanent, the statutory scheme appropriately affords additional time during which the Attorney General may explore medical options.

*United States v. Ferro*, 321 F.3d 756, 762 (8th Cir. 2003). Accordingly, the Court rejects Defendant's argument that commitment under § 4241(d) violates his rights to due process and equal protection of the laws, and affirms and adopts Judge Roemer's decision that Defendant must be committed to the custody of the Attorney General under § 4241(d).

At the oral argument on the instant motion, defense counsel raised two additional arguments related to his commitment to the Attorney General and subsequent hospitalization, neither of which were raised before Judge Roemer or in the written filings with this Court. First, Defendant argued that 28 C.F.R. § 0.96(j), which delegates to the Bureau of Prisons (the "BOP") the Attorney General's authority to attempt restoration under § 4241(d), is unlawful. Second, Defendant argued that, under § 4241(d), the Court may limit the hospitalization to a time period of less than four months, and that it should do so in this case.

The first of these arguments is without merit. The Attorney General has express statutory authority to delegate his functions to the various agencies of the Department of Justice. *See* 28 U.S.C. § 510 ("The Attorney General may from time to time make such provisions as he considers appropriate authorizing the performance by any other officer, employee, or agency of the Department of Justice of any function of the Attorney

General."). The BOP is within the Department of Justice, 18 U.S.C. § 4041, and so the delegation found within 28 C.F.R. § 0.96(j) is consistent with the Attorney General's authority under 28 U.S.C. § 510. The Court notes that while the Second Circuit has not considered the specific regulation at issue here, it has upheld the Attorney General's delegation of other functions to the BOP. *See United States v. McCarroll*, 166 F.3d 1202, 1998 WL 852914, at *1 (2d Cir. 1998) (unpublished table decision) ("[T]he BOP's collection of [the defendant]'s special assessment is entirely proper, since (1) 18 U.S.C. § 3013(b) provides that special assessments are to be collected in the same manner as criminal fines, (2) 18 U.S.C. § 3612(c) authorizes the Attorney General to collect criminal fines, and (3) the latter provision does not preclude the Attorney General from delegating that authority to the BOP, an agency under her direction.").

Nothing in the text of § 4241(d) suggests that the Attorney General's duties thereunder are non-delegable, nor has Defendant identified any authority supporting that proposition. To the contrary, the sole case cited by Defendant in connection with this argument is *Dalasta*. However, in *Dalasta*, the Eight Circuit explicitly declined to address the issue. 856 F.3d at 555. Moreover, the *Dalasta* court's concern appears to have been whether the BOP had adopted "an inflexible . . . policy . . . unduly restricting the Attorney General's statutory discretion to choose a 'suitable facility,'" *id.*, and not a concern about

- 14 -

the delegation of authority as a general matter.[5]  In any event, *Dalasta* does not stand for the proposition that 28 C.F.R. § 0.96(j) is an unlawful delegation of authority, nor has the Court located any authority for that proposition in its own research.  The Court is not persuaded by Defendant's argument regarding the lawfulness of 28 C.F.R. § 0.96(j).

Regarding Defendant's second newly raised argument, it is true that hospitalization under § 4241(d) need not extend for a full four months.  *See Strong*, 489 F.3d at 1055 ("Section 4241(d) provides a flexible mechanism through which the defendant could gain early release—namely, through regaining competency prior to the conclusion of the four-month period, or through an appropriate medical determination that there is no substantial probability that the defendant could be restored to competency in the foreseeable future." (quotation omitted)); *Filippi*, 211 F.3d at 652 (discussing that although § 4241(d) is "categorical in determining who shall be incarcerated, . . . it is much more flexible and case-oriented in determining the length of incarceration" (emphasis omitted)).  However, the Court does not find it appropriate to set a firm outer limit on the length of the commitment at this point, before the relevant medical personnel have even had the chance to examine Defendant.  Indeed, when questioned at oral argument as to Defendant's

---

[5]  It is not clear whether defense counsel is also contending (similar to the defendant in *Dalasta*) that the BOP is improperly limiting the Attorney General's discretion via the adoption of policies regarding suitable facilities under § 4241(d).  Defendant raised the delegation issue here for the first time at oral argument and he has not objected to any specific policies.  The Court cannot find in a vacuum that unspecified BOP policies render the statutorily-authorized delegation of the Attorney General's functions unlawful.

position on a time period that would be reasonable but less than the four months set forth in § 4241(d), defense counsel was not able to articulate a specific period of time. This is likely due to the fact that any determination in that regard will depend, in part, on a medical assessment of Defendant's progress, if any, in responding to treatment.

Nonetheless, in view of Defendant's concerns, the Court will order that the BOP provide a report regarding Defendant's prognosis within 45 days of his hospitalization. If it appears from that report that there is no reasonable chance that Defendant will regain competency in the foreseeable future, this information will help inform the Court as to the reasonableness of the length of any further hospitalization, and if necessary and appropriate, the Court can order that the hospitalization be ended prior to the expiration of the four-month period.

## III.  Speedy Trial Issues

Defendant also argues that the criminal complaint against him should be dismissed because he has been deprived of his statutory and constitutional rights to a speedy trial. The Court finds these arguments without merit, for the reasons discussed below.

### A.  Speedy Trial Act

Pursuant to the STA, "[a]ny information or indictment charging an individual with the commission of an offense shall be filed within thirty days from the date on which such individual was arrested[.]"  18 U.S.C. § 3161(b). In this case, Defendant was arrested on June 5, 2018, *Brennan*, No. 18-mj-5083, Dkt. 10, and no information or indictment has

been filed. Defendant contends that more than 30 non-excludable days have elapsed since June 5, 2018, and that the criminal complaint must therefore be dismissed. (Dkt. 6 at 16-21)

Defendant's STA argument relies on § 3161(h)(1)(F), which provides that transportation delays in excess of ten days are presumptively unreasonable, and on 18 U.S.C. § 4247(b), which provides that a maximum of 75 days may be expended in completing a criminal responsibility evaluation (with a shorter, maximum 45-day limitation for competency evaluations). Defendant contends that he was in transport for 24 days prior to his competency and criminal responsibility examinations (from July 27, 2018, when Judge Roemer ordered the examination, to August 20, 2018, when he arrived at MCC Manhattan) and for another 43 days after the completion of the evaluations (from November 8, 2018, when the last examination of Defendant occurred, to December 21, 2018, when Defendant returned to this District). (Dkt. 6 at 16-17). Defendant further argues that the time limits set forth in § 4247(b) were violated in this case, and that the excess days expended on performing the competency and criminal responsibility evaluations are also non-excludable. (*Id.* at 18).

Defendant's STA arguments must fail because he has not shown that more than 30 non-excludable days have elapsed since June 5, 2018. As an initial matter, Defendant has not raised any argument that the time prior to July 27, 2018, was not properly excluded. The Court finds that the time prior to July 27, 2018, was properly excluded for the reasons contemporaneously stated on the record.

Turning to the time period between July 27, 2018, and August 20, 2018, as previously set forth, on July 27, 2018, Judge Roemer, without objection from defense counsel, excluded all time through September 27, 2018, pursuant to §§ 3161(h)(7)(a) and (h)(7)(B)(iv). Multiple circuit courts have held that the ten-day limitation on transportation delays does not impact "the ends-of-justice continuances that courts may grant under § 3161(h)(7)." *United States v. Turner*, 602 F.3d 778, 785 (6th Cir. 2010); *see also United States v. Conlan*, 786 F.3d 380, 393 (5th Cir. 2015) (rejecting STA argument based on excess transportation delays where the defendant "failed to challenge the court's ends-of-justice findings, which cover[ed] th[e] entire period"). In other words, the exclusion of time under § 3161(h)(7) renders the reasonableness of any transportation delays through September 27, 2018, a moot point. Accordingly, Defendant has failed to show that any non-excludable days elapsed between July 27, 2018, and August 20, 2018.

Moreover, even setting aside the ends-of-justice continuance granted by Judge Roemer on July 27, 2018, binding Second Circuit precedent provides that, as a result of the exclusion found at § 3161(h)(1)(A), "delays arising from mental competency examinations and pretrial motions are excluded from the running of the speedy trial clock, without any inquiry into the reasonableness of the delay." *United States v. Vasquez*, 918 F.2d 329, 333 (2d Cir. 1990). In *Vasquez*, there was an eight-month transportation delay, but the Second Circuit found that even if that delay was unreasonable under the transportation exclusion (which then appeared at § 3161(h)(1)(H)), it was nonetheless excludable. *Id.* ("We note

that subsection 3161(h)(1)(H) specifies with regard to transportation for the purpose of examination that 'any time consumed in excess of ten days from the date of an order of removal or an order directing such transportation, and the defendant's arrival at the destination shall be presumed to be unreasonable.' Nonetheless, even if we assume that administrative mistakes in this case led to an 'unreasonable' delay, that delay would not necessarily have constituted a violation of Vasquez's rights under the Speedy Trial Act. . . . Since the delays here complained of by Vasquez arose from proceedings to determine his competency and were prior to the conclusion of the hearing thereon, they must be excluded from the calculation of the speedy trial clock whether or not they are reasonable.").[6] Under *Vasquez*, all the time in this case between July 27, 2018, and December 3, 2018, was excluded pursuant to § 3161(h)(1)(A), regardless of any unreasonable transportation delays.[7]

---

[6] In light of the clear discussion of the transportation exclusion in *Vasquez*, the Court is puzzled by Defendant's argument that the *Vasquez* court "didn't hold that the 10-day cap on excludable time for transportation delays doesn't apply to transportation to and from competency evaluations." (Dkt. 6 at 20). To the contrary, the *Vasquez* court found that a transportation delay of eight months was subsumed within the § 3161(h)(1)(A) exclusion, irrespective of the ten-day limitation on transportation delays. 918 F.2d at 333. Indeed, in *United States v. Tinklenburg*, 579 F.3d 589 (6th Cir. 2009) (discussed further below), the Sixth Circuit cited *Vasquez* for the proposition that "the Second Circuit has held that *any* delay associated with a competency evaluation from the date of the order directing the evaluation until completion of the competency hearing, including delay from transporting a defendant for the evaluation, is excludable under § 3161(h)(1)(A)." *Id.* at 596 (underlined emphasis added).

[7] The Court notes that the presumption of unreasonableness for transportation delays in excess of ten days is rebuttable. *See, e.g.*, *United States v. Zabawa*, 719 F.3d 555, 562

- 19 -

Defendant argues that more recent out-of-circuit caselaw undercuts *Vasquez*. In particular, Defendant cites *United States v. Tinklenburg*, 579 F.3d 589 (6th Cir. 2009), wherein the Sixth Circuit disagreed with *Vasquez* and found that "all delays caused by proceedings to determine a defendant's competency are excluded, except for the time during which the defendant is supposed to be in transit, which is presumptively unreasonable if longer than ten days." *Id.* at 596.[8] However, the Second Circuit has never expressly or implicitly overruled *Vasquez* or given any other indication that it is no longer good law. District courts in this Circuit regularly rely on *Vasquez* in considering STA arguments. *See, e.g.*, *United States v. Barnes*, No. 16-CR-6029L, 2018 WL 4926857, at *2 (W.D.N.Y. Oct. 11, 2018) ("The principal exclusion was the time necessary to complete the competency examination for [the defendant]. Although that proceeding took perhaps a bit longer than desired because of confusion in transporting [the defendant], the delay

_____

(6th Cir. 2013); *United States v. Noone*, 913 F.2d 20, 26 n.6 (1st Cir. 1990). In this case, it appears there may have been a reasonable explanation for some of the transportation delays, including the unavailability of a placement at a suitable facility. (*See* Dkt. 6 at 7) (noting that as of August 3, 2018, the Marshals Service was still awaiting a designation from the BOP as to where Defendant should be transported for the evaluations). However, the Government has failed to raise this issue in its briefing, and so the Court does not rely on it in reaching its conclusions.

[8]     The Sixth Circuit's decision in *Tinklenburg* was ultimately affirmed on different grounds by the Supreme Court. *See United States v. Tinklenburg*, 563 U.S. 647, 663 (2011) ("We disagree with the Sixth Circuit's interpretation of both subparagraph (D) and subparagaph (F), and now hold that its interpretations of those two provisions are mistaken. Nonetheless the conclusions the court drew from those two interpretations in relevant part cancel each other out such that the court's ultimate conclusion that Tinklenberg's trial failed to comply with the Speedy Trial Act's deadline is correct.").

was not excessive and not purposeful. In relying on *United States v. Vasquez*, 918 F.2d 329, 333 (2d Cir. 1990), the Magistrate Judge found, and I agree, that the delay on this case in completing the competency examination must be excluded under the statutory speedy trial timetable."); *Wells v. United States*, No. CIV. 3:07CV1740 JBA, 2010 WL 363339, at *5 n.4 (D. Conn. Jan. 25, 2010) ("There can be no dispute that all of this time is properly excluded under 18 U.S.C. § 3161(h)(1)(A), which excludes any delay resulting from proceedings, including examinations, to determine mental competency without regard to whether or not the delay is reasonable. *United States v. Vasquez*, 918 F.2d 329, 333 (2d Cir.1990).").

This Court cannot disregard established Second Circuit precedent simply because other circuit courts have reached differing conclusions.[9] As such, even had the time between July 27, 2018, and August 20, 2018, not been excluded under § 3161(h)(7), it was automatically excluded under § 3161(h)(1)(A), because it "arose from proceedings to determine [Defendant's] competency and [was] prior to the conclusion of the hearing

---

[9]    At least one other circuit court appears to have taken the same approach as the Second Circuit. *See United States v. Tewid*, 86 F. App'x 224, 224 (9th Cir. 2003) ("[The defendant] contends that there were days during this period of time that should not have been excluded because there was a transportation delay in excess of that permitted under 18 U.S.C. § 3161(h)(1)(H). However, regardless of the merits of that issue, the time in question was still excludable because it was separately attributable to a delay pertaining to proceedings associated with determining the mental competency of the defendant and resolving motions pertaining thereto.").

thereon." *Vasquez*, 918 F.2d at 333. The Court therefore rejects Defendant's conclusion

that 14 non-excludable days elapsed while he was being transported to MCC Manhattan.[10]

The Court next considers the time period between August 20, 2018, and November

8, 2018, during which Defendant was undergoing competency and criminal responsibility

evaluations. Defendant argues that this time period exceeded the maximum of 75 days for

criminal responsibility examinations set forth in § 4247(b), and that the excess days (a total

of 5 days) are non-excludable.[11] (Dkt. 6 at 16-17). This argument is legally unsound.

Although the Second Circuit has not ruled on this issue, the circuit courts that have

considered it have uniformly found that "the Speedy Trial Act . . . does not provide a

remedy for a violation of 18 U.S.C. § 4247(b)'s time limitations for a mental competency

examination." *United States v. Taylor*, 353 F.3d 868, 869 (10th Cir. 2003); *see also United

States v. Daychild,* 357 F.3d 1082, 1094 (9th Cir. 2004) ("We agree with the district court

---

[10]    Because the Court reaches this conclusion, it need not address the alternate argument, raised by the Government, that the transportation delay ceased on August 9, 2018, when Defendant reached the New York City area, and that any delay thereafter was due to a housing issue. (Dkt. 9 at 8).

[11]    Separate and apart from the automatic exclusion pursuant to § 3161(h)(1)(A), the time from August 20, 2018, through November 8, 2018, was also excluded based on Judge Roemer's interests-of-justice exclusions granted at the appearances on July 27, 2018, and September 27, 2018, whereby an interests-of-justice exclusion of time was ultimately granted through December 3, 2018. While defense counsel noted at the appearance on September 27, 2018, that he was reserving his client's rights under § 3161(h)(1)(F) and not waiving any time for transportation delays in excess of 10 days, that provision (§ 3161(h)(1)(F)) does not impact the ends-of-justice continuances granted under § 3161(h)(7). *See Conlan*, 786 F.3d at 393; *Turner*, 602 F.3d at 785.

that the time period under 18 U.S.C. § 4247 has no bearing on speedy trial calculations."); *United States v. Murphy*, 241 F.3d 447, 456 (6th Cir. 2001) ("Every court that has decided this issue has concluded that § 4247(b) does not limit the time period for a competency examination with respect to calculations under the Speedy Trial Act."); *United States v. Fuller*, 86 F.3d 105, 106 (7th Cir. 1996) ("[N]o sanction for a violation of the time limits in 18 U.S.C. § 4247(b) is specified. To put the two statutes together, borrowing the 30 and 45 day limits from the commitment statute for interpolation into the limitless delay provision of the Speedy Trial Act, would be an audacious bit of judicial creativity—and to no purpose that we can see."). The Court is persuaded by the reasoning in these cases, and particularly by the Seventh Circuit's observation that there is no statutory basis to import § 4247(b)'s time limitations into the STA. The Court, in accordance with "every other court that has considered the question," finds that "§ 4247(b) does not limit the excludable time period for a competency examination under the STA." *United States v. Riley*, No. 3:17-cr-00084, 2018 WL 1122075, at *5 (M.D. Tenn. Mar. 1, 2018). The Court therefore holds that any § 4247(b) violation in this case does not affect the STA calculation.[12]

---

[12] It is not clear what precisely is the appropriate sanction for a § 4247(b) violation, but dismissal does not appear to be an available remedy. *See, e.g., United States v. Gould*, No. 6:13-cr-175-Orl-31GJK, 2013 WL 5178788, at *2 (M.D. Fla. Sept. 13, 2013) ("Congress did not provide a remedy for violation of § 4247(b) timelines. . . . [T]he Court cannot fulfill [the defendant]'s request that the Court provide legal advice on the correct remedy to the statutory violation. [The defendant] has not provided any authority demonstrating dismissal of his charge is the appropriate remedy for a violation of § 4247(b)."). Nor, as Defendant seems to suggest in his papers, is release from custody a viable sanction, inasmuch as the Court is statutorily mandated under § 4241(d) to commit

Turning to the time period between November 8, 2018, and December 21, 2018, pursuant to *Vasquez*, all the time through December 3, 2018, when the hearing on Defendant's competency occurred, was automatically excluded under § 3161(h)(1)(A). *See* 918 F.2d at 333 (finding that under § 3161(h)(1)(A), all the time from the date the mental competency evaluation is ordered through the conclusion of the hearing as to the defendant's competency is excluded). In addition, this time was excluded pursuant to § 3161(h)(7) based upon the interests-of-justice exclusion through December 3, 2018, granted by Judge Roemer at the appearance on September 27, 2018. Accordingly, no non-excludable days elapsed prior to December 3, 2018.

Next, all the time from December 3, 2018, when Judge Roemer found Defendant incompetent, and continuing through the present, is excluded under § 3161(h)(4), regardless of any transportation delays. *See, e.g., United States v. Patterson*, 872 F.3d 426, 433 (7th Cir. 2017) (finding the exclusion for unreasonable transportation delays under § 3161(h)(1)(F) does not apply after the defendant is found mentally incompetent and time

---

Defendant to the Attorney General's custody. Defendant's reliance on the Seventh Circuit's decision in *United States v. Fuller*, 86 F.3d 105, is misplaced. (*See* Dkt. 6 at 18). The Seventh Circuit's reference to habeas corpus in *Fuller* indicated it was a potential remedy for a defendant who remained in the custody of a mental institution in violation of the statutory limitations on initial competency examinations set forth in § 4247(b); it did not reference or discuss the mandatory hospitalization under § 4241(d). *See* 86 F.3d at 106-07 (noting that habeas corpus is "the traditional remedy for illegal detention in a mental institution"); *cf.* 18 U.S.C. § 4247(g) (confirming that illegality of detention pursuant to §§ 4243, 4246, or 4248 (but not § 4241) may be established by writ of habeas corpus).

is excluded under § 3161(h)(4)); *United States v. Pendleton*, 665 F. App'x 836, 839 (11th Cir. 2016) ("According to the statute's plain language, any qualifying delay is excludable, regardless of whether it would or would not qualify under a different subsection of the statute. Thus, if a defendant is mentally incompetent under § 3161(h)(4), that time is excludable even if there is also a transportation delay that is unreasonably long and thus not excludable under § 3161(h)(1)(F)."); *United States v. Romero*, 833 F.3d 1151, 1155-56 (9th Cir. 2016) (finding that "§ 3161(h)(4) applies upon a finding of incompetence as a matter of definition and irrespective of how a court may view it in a particular case," and that once § 3161(h)(4) applies, it trumps the ten-day transportation delay limitation under § 3161(h)(1)(F) (quotation omitted)). Once Defendant was determined to be mentally incompetent, § 3161(h)(4) applied automatically. Furthermore, Defendant filed his motion to dismiss on December 3, 2018, causing time to automatically be excluded through issuance of this Decision and Order, pursuant to §§ 3161(h)(1)(D) and (h)(1)(H).

Finally, the Court notes that the Government made an oral motion for detention on June 5, 2018, and that motion remains pending.[13] Oral motions for detention are sufficient

---

[13] The Court has considered Defendant's argument that the Bail Reform Act does not apply to him and has rejected it, for the reasons discussed in Part IV of this Decision and Order. The detention hearing in this matter has been held in abeyance due to the proceedings regarding Defendant's competency. However, if Defendant wishes to have a detention hearing, he is free to request that such a hearing be held before Judge Roemer. *See Smith*, 764 F. Supp. 2d at 545 (noting that "[d]etention proceedings were held in abeyance pending the outcome of competency proceedings," but finding "no reason why a detention hearing cannot be held" while competency issues are being addressed).

to trigger the automatic exclusion of time under § 3161(h)(1)(D). *See United States v. Hughes*, 840 F.3d 1368, 1378 (11th Cir. 2016) ("We find that the period from April 24 to 29 is excludable under the Speedy Trial Act. Specifically, this period constitutes excludable pretrial-motion delay triggered by the government's oral motion for [the defendant]'s detention. Under 18 U.S.C. § 3161(h)(1)(D), the filing of a pretrial motion stops the Speedy Trial clock until 'the conclusion of the hearing on, or other prompt disposition of, such motion.' *Id.* Nor does the oral nature of the motion affect the rule's applicability." (footnote omitted)); *see also United States v. Patterson*, 525 F. App'x 681, 689 (10th Cir. 2013) ("Subsections 3161(h)(1)(D) and (H) provide for the exclusion of the period between March 3 and March 8 while the initial detention motion was pending[.]"); *United States v. Stubblefield*, 643 F.3d 291, 294-95 (D.C. Cir. 2011) (excluding date on which oral motion for detention was made from STA calculation); *United States v. Gonzalez-Rodriguez*, 621 F.3d 354, 368 (5th Cir. 2010) ("We see no reason why an oral motion [for detention] would not trigger the excludable delay contemplated by § 3161(h)(1)(D)."). The pendency of the Government's motion for detention throughout the relevant time period is yet another reason why 30 non-excludable days have not elapsed in this case.

In sum, with respect to the time that elapsed between July 27, 2018, and the present (the relevant time period for purposes of Defendant's statutory speedy trial challenge), the time period through December 3, 2018, was excluded in the interests of justice pursuant to

§ 3161(h)(7) based upon the findings made by Judge Roemer at the appearances on July 27, 2018, and September 27, 2018; the time between July 27, 2018, and December 3, 2018, was also automatically excluded pursuant to § 3161(h)(1)(A) and *Vasquez*, and the fact that the length of the evaluations exceeded the allowable time set forth in § 4247(b) does not impact this conclusion; as of December 3, 2018, the time has been automatically excluded pursuant to §§ 3161(h)(1)(D), (h)(1)(H), and (h)(4); and the entire period has been automatically excluded pursuant to § 3161(h)(1)(D) because of the Government's pending motion for detention. Accordingly, and for all the reasons discussed above, the Court denies Defendant's motion to dismiss based on an alleged violation of the STA.

### B. Constitutional Speedy Trial Right

Defendant has also argued that his Sixth Amendment right to a speedy trial has been violated, separate and apart from any violation of the STA. (Dkt. 6 at 21-23). The Court finds this argument without merit.

"The Sixth Amendment guarantees that, '[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy . . . trial. . . .'" *Doggett v. United States*, 505 U.S. 647, 651 (1992) (alterations in original). The Supreme Court has set forth four factors for consideration in deciding whether the Sixth Amendment has been violated by a pre-trial delay: "whether delay before trial was uncommonly long, whether the government or the criminal defendant is more to blame for that delay, whether, in due course, the defendant

asserted his right to a speedy trial, and whether he suffered prejudice as the delay's result."

*Id.* (citing *Barker v. Wingo*, 407 U.S. 514, 530 (1972)). Additionally:

> "The first of these is actually a double enquiry. Simply to trigger a speedy trial analysis, an accused must allege that the interval between accusation and trial has crossed the threshold dividing ordinary from 'presumptively prejudicial' delay, since, by definition, he cannot complain that the government has denied him a 'speedy' trial if it has, in fact, prosecuted his case with customary promptness."

*Id.* at 651-52 (quoting *Barker*, 407 U.S. at 530-31).

"It comes as no surprise that courts have been unable to define 'presumptively prejudicial.'" *United States v. Vassell*, 970 F.2d 1162, 1164 (2d Cir. 1992) (noting that one commentator has discerned "a general consensus that a delay of over eight months meets this standard, while a delay of less than five months does not."); *see also Doggett*, 505 U.S. at 652 & n.1 (noting that delay approaching one year is "generally sufficient" to warrant further inquiry). In this case, Defendant was arrested on June 5, 2018, and so the delay at issue is roughly seven months. Courts have found similar delays not to be presumptively prejudicial. *See, e.g., McCray v. Capra*, No. 9:15-cv-01129-JKS, 2017 WL 3836054, at *10 (N.D.N.Y. Aug. 31, 2017) ("Here, [the defendant]'s trial began roughly 7 months after his initial arrest. [The defendant] thus fails to show that the delay is 'presumptively prejudicial.'"); *United States v. Bender*, No. 02CRMISC40JCF, 2003 WL 282184, at *2 (S.D.N.Y. Feb. 7, 2003) (finding that a delay of seven months "falls well short of being presumptively prejudicial").

However, the Court need not resolve whether this case meets the threshold of presumptively prejudicial, because even assuming that it does, consideration of the *Barker* factors demonstrates that no Sixth Amendment violation has occurred. As to the first factor, "[t]he length of the delay here was less extensive than that tolerated in other cases." *Vasquez*, 918 F.2d at 338 (finding delay of 26 months did not violate Sixth Amendment right to speedy trial). Given the relatively brief period at issue in this case, the Court finds that this factor does not weigh against the Government.

With respect to the second factor:

> Although no single *Barker* factor is a necessary or sufficient condition to the finding of a deprivation of the right of speedy trial, the second factor—reason for delay—is often critical. The Sixth Amendment is rarely violated by delay attributable entirely to the defendant, or by delay that serves some legitimate government purpose.

*United States v. Moreno*, 789 F.3d 72, 79 (2d Cir. 2015) (citations and quotation omitted). In this case, the bulk of the delay is due to: (1) Defendant's request that he undergo a local mental health evaluation; (2) the conduct of the mental competency and criminal responsibility evaluations; and (3) consideration of Defendant's motion to dismiss and the instant appeal from the denial thereof. These items are all either attributable to Defendant or serve a legitimate government purpose. While it is true that any delay in transporting Defendant to or from his competency and criminal responsibility evaluations (and any delay in actually beginning the evaluations once Defendant arrived) is charged to the Government for purposes of the Sixth Amendment analysis, *see United States v. Tigano*,

880 F.3d 602, 614 (2d Cir. 2018) (finding that "the USMS's failure to provide timely transportation to and from the site of the examination" counted against the Government for speedy trial purposes), administrative issues account for a small period of the relatively brief delay in this case, *see Moreno*, 789 F.3d at 81 (holding the Government can be faulted only for the portion of the delay during which "it ceased to exercise reasonable diligence"). Accordingly, the Court finds that the second *Barker* factor favors the Government.

The third *Barker* factor—Defendant's assertion of his speedy trial rights—favors the Government. Defendant did not raise any speedy trial issues until December 3, 2018, after the bulk of the delay he now complains of had elapsed. To the contrary, the Court has listened to the audio transcripts of the prior proceedings in this matter, and Defendant raised no objections to the repeated ends-of-justice exclusions granted by Judge Roemer, other than to state that he reserved his right to argue that certain transportation delays were unreasonable. The Court therefore finds that this factor favors the Government. *See United States v. Shine*, No. 17-CV-28-FPG, 2018 WL 3737877, at *3 (W.D.N.Y. Aug. 7, 2018) (finding third *Barker* factor favored the government where the defendant "did not assert his right to a speedy trial until he filed his first speedy trial motion").

With respect to the fourth *Barker* factor, "[e]xcessive pretrial delay can inflict three kinds of cognizable prejudice: (i) oppressive pretrial incarceration, (ii) anxiety and concern of the accused, and (iii) the possibility that the defense will be impaired." *Moreno*, 789 F.3d at 81 (quotation omitted). The last of these concerns is "the most serious," because

"the inability of a defendant adequately to prepare his case skews the fairness of the entire system." *Id.* (quotation omitted).

In this case, Defendant has suffered some prejudice because he has been in custody since his arrest and has suffered the attendant anxiety. However, "the instant facts do not present any uniquely oppressive circumstances to be afforded additional weight, short of the general impact of [being in custody]." *United States v. Newbern*, No. 15-CR-98-FPG-2, 2018 WL 1250018, at *3 (W.D.N.Y. Mar. 12, 2018). Defendant argues that "his mental condition renders him more vulnerable to the stress and disruption of constant movement and isolation in custody" than others, and that pretrial custody is thus more harmful to him. (Dkt. 6 at 23). This argument is speculative, and no support for it has been given. Accordingly, while Defendant's loss of liberty is "a hardship and must be included in the assessment of 'prejudice,'" it "does not strengthen [Defendant's] argument enough to carry the day." *Vasquez*, 918 F.2d at 338. This is particularly so because there is no evidence in this case that the relatively brief delay has impaired Defendant's ability to defend himself. To the contrary, the delay in this case has largely been in the interest of ensuring that Defendant can adequately assist in his own defense. Under these circumstances, the fourth *Barker* factor weighs only slightly against the Government.

Considering and balancing all the *Barker* factors, the Court rejects Defendant's Sixth Amendment speedy trial claim for the reasons discussed above. Under these

circumstances, dismissal of the criminal complaint on Sixth Amendment speedy trial grounds is not warranted.

## IV.  <u>Bail Reform Act</u>

Defendant's final argument is that he should be released from custody because the Bail Reform Act does not apply to him. (Dkt. 6 at 23-24). Defendant's argument relies on an unpublished case from the District of New Jersey, *United States v. Peppi*, No. 06–157 (AET), 2007 WL 674746 (D.N.J., Feb. 28, 2007). However, in *Magassouba*, the Second Circuit discussed *Peppi* and noted that in *Peppi*, "the defendant's inability to regain competency was undisputed, and he had been referred for civil commitment pursuant to [18 U.S.C.] § 4246." 544 F.3d at 413. By contrast, in *Magassouba*, as in this case, § 4241(d) proceedings were ongoing, and the Second Circuit held that a defendant "remains pending trial [and the Bail Reform Act remains applicable] through the completion of § 4241 proceedings." *Id.* In other words, because the Court has found that Defendant remains subject to the provisions of § 4241(d) at this time, Defendant's argument based on *Peppi* is foreclosed by the Second Circuit's decision in *Magassouba*.

## CONCLUSION

For the foregoing reasons, and upon *de novo* review, the Court denies Defendant's appeal (Dkt. 1) and affirms Judge Roemer's Decision and Order denying Defendant's motion to dismiss and for release from custody, *Brennan*, No. 18-mj-5083, Dkt. 18, and the Court also affirms Judge Roemer's Order determining that Defendant must be

committed to the custody of the Attorney General pursuant to § 4241(d), *id.*, Dkt. 19. Thus,

the stay of the Order entered by Judge Roemer, *id.* at 3, is hereby lifted. The Court adds to

that Order a requirement that the Attorney General or his designee provide the Court with

an interim prognosis report within 45 days after Defendant's hospitalization.

SO ORDERED.

ELIZABETH A. WOLFORD
United States District Judge

Dated:     January 25, 2019
           Rochester, New York